IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


LIBBY GRIEGO,

        Plaintiff,

vs.                                                                 Civ. No. 04-0663 MV/RHS

MORA VALLEY COMMUNITY HEALTH
SERVICES, INC., a Corporation, SAMUEL
ARAGON, President, Board of Directors,
ANTONIO MEDINA, Former Executive
Director,

        Defendants.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Joint Motion to Dismiss in Part, **[Doc. 7]**, filed on October 19, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**.

## BACKGROUND

On June 14, 2004, Libby Griego ("Plaintiff") filed a Complaint against the Mora Valley Community Health Services ("the Clinic"); Antonio Medina ("Medina"), Executive Director of the Clinic; and Samuel Aragon ("Aragon"), President of the Clinic's Board of Directors, alleging seven different causes of action: sexual harassment; negligence; negligent supervision; assault and battery; intentional infliction of emotional distress; retaliation; and violation of civil rights. Plaintiff alleges that on several occasions Medina inappropriately touched her and sexually

harassed her. Specifically, Plaintiff alleges that on December 31, 2001, Medina asked Plaintiff to copy documents for a Board of Directors meeting. While she was at the copy machine, Medina approached her from behind and rubbed his erect penis against her buttocks. In September 2002, Medina came into her office and grabbed her buttocks. Later that month, Plaintiff was in Medina's office discussing a new Outreach Coordinator position that was available at the Clinic. Medina told her that if she would share of bottle of wine and "get silly" with him, she would have a good chance of getting the job. Plaintiff declined. During a subsequent job review, Plaintiff told Medina that he had been acting inappropriately towards her. Plaintiff was not promoted. Medina allegedly told Plaintiff that if she had shared a bottle of wine with him and had "gotten silly," she would have gotten the job.

Plaintiff reported the behavior, but alleges that neither the Clinic, nor Aragon, did anything to remedy the situation. Plaintiff further alleges that Aragon and the Clinic knew or should have known of the hostile work environment that Medina created for Plaintiff and for other employees. Plaintiff argues that Defendants' conduct violated, *inter alia*, the Fourth Amendment, 42 U.S.C. § 1981, and 18 U.S.C. § 2000e, *et seq*. (Title VII).

## **STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading. Fed. R. Civ. P. 12(b)(6). The Court may not dismiss a cause of action under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts supporting his or her claim that would entitle him or her to relief. *See, e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989). When considering a motion to

dismiss, the Court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991). The issue in reviewing the sufficiency of a complaint "is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). "[G]ranting a motion to dismiss is 'a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the...laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## DISCUSSION

Defendants seek to dismiss Plaintiff's 42 U.S.C. § 2000e claims against Aragon and Medina, as well as Plaintiff's Fourth Amendment and 42 U.S.C. § 1981 claims against all Defendants. First, Aragon and Medina argue that they cannot be held liable under Title VII because Title VII only imposes liability on an employer, not its employees or officers. Second, all Defendants argue that Plaintiff's § 1981 claims must be dismissed because Plaintiff has not alleged any racial discrimination or racially-motivated mistreatment. Finally, all Defendants argue that Plaintiff's Fourth Amendment claims must be dismissed because she has not alleged any prohibited "search" or "seizure."

**I.      Plaintiff's Title VII Claims Against Aragon and Medina**

Plaintiff's Response to Defendants' Motion to Dismiss indicates that she has sued Aragon and Medina under Title VII in their individual capacities. Plaintiff proposes amending her Complaint to include Aragon and Medina in their official capacities as well.  Whether sued in their individual or official capacity, for the reasons that follow, the individual defendants must be dismissed from Plaintiff's Title VII claims.

**A.      Aragon and Medina:  Official Capacity Suit Under Title VII**

A suit against an individual in his official capacity is really "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 n. 55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166.

Because of these principles, an official capacity suit against an employee should proceed only as an alternative avenue of suing the employer directly.  As the Tenth Circuit explained in *Sauers v. Salt Lake County*, a Plaintiff can sue an entity *either* by "'naming the supervisory employees as agents of the employer or by naming the employer directly.'" 1 F.3d 1122, 1125 (10th Cir. 1993) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).  In the instant case, Plaintiff's claims against Aragon and Medina in their official capacities are redundant of her suit against the Clinic itself and will be dismissed in the interests of judicial economy.  *See Sims v. Unified Gov't of Wyandotte County/Kan. City, Kan*., 120 F.Supp.2d 938, 945 (D. Kan. 2000) (citing *Busby*, 931 F.2d at 776) (when a plaintiff names both a municipality and a municipal

officer in his official capacity as defendants in an action, the suit against the officer is redundant, confusing, and unnecessary and should be dismissed); *Land v. Midwest Office Tech., Inc.*, 979 F.Supp. 1344, 1348 (D. Kan. 1997) (citations omitted) (holding that in a Title VII case, dismissal of an official capacity claim against an employee when the employer is also a defendant promotes "judicial economy and efficiency" and "prevents the possibility of juror confusion").

    B.   Aragon and Medina:  Individual Capacity Suits Under Title VII

   Plaintiff's claims against Aragon and Medina in their individual capacities are similarly subject to dismissal. Under Title VII, statutory liability is borne solely by employers, not by individual supervisors. "[S]uits against individuals must proceed in their official capacity; individual capacity suits are inappropriate." *Haynes v. Williams*, 88 F.3d 898, 899, 901 (10th Cir. 1996) ("the language and structure of amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors").

   Plaintiff contends that this well-established rule is inapplicable because Aragon and Medina, as her supervisors, exercised significant control over her hiring and conditions of employment, and thus operated as the alter ego of the Clinic.  The Tenth Circuit has held that this alter ego theory allows an employee suit to go forward only in those narrow situations where the bad actor is an agent whose high managerial rank in or ownership of the company makes him or her the employer's alter ego.  *See Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1232 (10th Cir. 2000) (affirming district court's alter ego instruction where defendant was a senior level manager at a large bank and as such, was much more than one of the bank's "supervisory employees"). The alter ego theory is not applicable, however, where a plaintiff alleges that an employee is liable for discrimination or harassment by an employee, based solely on facts that the

employee was plaintiff's supervisor and exercised a high degree of control over him. *Id.; see also Land*, 114 F.Supp.2d at 1148.  In the instant case, Plaintiff simply alleges that Aragon and Medina were her supervisors and that they exercised control over the conditions of her employment.  She does not allege any other facts which demonstrate that Aragon or Medina functioned as the alter ego of the Clinic.

As such, all Title VII claims against Aragon and Medina in their individual capacities are dismissed.  Furthermore, any amendment to Plaintiff's Complaint to include Aragon and Medina in their official capacities would be futile for the reasons described above.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

**II.     Plaintiff's §1981 Claims**

Section 1981 guarantees that citizens of the United States "shall in all respects have the same rights as are enjoyed by white citizens[.]"  This section is directed solely at racial discrimination and does not address gender discrimination.  *See generally Runyon v. McCrary*, 427 U.S. 160 (1976).  Because Plaintiff makes absolutely no allegations that she was discriminated against because of her race or that she suffered race-based mistreatment, Plaintiff's § 1981 claims fail as a matter of law and must be dismissed.

**III.    Plaintiff's Fourth Amendment Claims**

The Fourth Amendment of the Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV.  "Implicit in this language is the notion that the amendment applies to a limited range of governmental conduct."  *United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir. 1990), *cert. denied*, 498 U.S. 961 (1990).  The Amendment "principally applies in the context of law

enforcement, preventing police from searching private areas without a warrant absent exigent circumstances and from seizing suspected criminals unreasonably." *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1012 (7th Cir. 1995) (citing *Ingraham v. Wright*, 430 U.S. 651, 673 n. 42 (1977)). Because of the "awkward fit between the Fourth Amendment and non-law enforcement action," non-law enforcement government actors "come within the purview of the Fourth Amendment only when their searches or seizures of individuals have no other purpose but to aid the government's investigatory or administrative functions." *Wallace*, 68 F.3d at 1013, 1014 (citing *Attson*, 900 F.2d at 1429).

When non-law enforcement government action is alleged to be in violation of the Fourth Amendment, the conduct reasonably must be characterized as a search or seizure. *See Attson*, 900 F.2d at 1429 ("[W]hile the reach of the fourth amendment has been extended to include various types of governmental conduct outside the traditionally recognized area of law enforcement, the [Supreme] Court has been careful to limit this expansion to governmental conduct that can reasonably be said to constitute a 'search' or a 'seizure[.]'"). In the instant case, Plaintiff alleges she was subject an illegal seizure.[1] Within the meaning of the Fourth Amendment, a "seizure" occurs only when a state actor "by means of physical force or show of authority ... in some way restrained the liberty of a citizen." *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

Plaintiff argues that the Fourth Amendment should be interpreted in such a way that the "[s]eizure of an individual...connotes the taking of one physically or constructively, into custody

---

[1] Plaintiff concedes that she was not subject to a "search" in violation of the Fourth Amendment.

and detaining her, thus causing a deprivation of her freedom in a significant way, with real interruption of her liberty [of] movement." Pltf. Resp. at 3. Thus, Plaintiff argues, Medina "without a doubt" seized her in violation of the Fourth Amendment "every time he influenced her liberty of movement by putting her in position that she had to move to avoid or discourage his unwanted advances." *Id.* Notably, Plaintiff fails to cite any case law in support of this proposition. Plaintiff further argues that the Clinic is a "quasi-governmental" entity and therefore comes within the purview of the Fourth Amendment.

Defendants, on the other hand, argue that Plaintiff does not allege any detention or restriction of movement in her Complaint that is violative of the Fourth Amendment. Additionally, Defendants argue that because they are non-law enforcement governmental actors, their actions do not come within the purview of the Fourth Amendment because they were not aiding the government's investigatory or administrative functions. Def. Rep. Mtn. at 6.

As a preliminary matter, the Court has not found, and Plaintiff does not cite, any case law to support her argument that Medina's conduct constituted an unreasonable seizure. Plaintiff does not allege in her Complaint that Medina's actions communicated to her that she was not free to leave, nor does she allege that Medina physically restrained or detained her in any way. At most, as Defendants argue, Medina's actions caused a "detour" in that Plaintiff had to move away from him to avoid his advances. This, however, does not amount to a seizure.

Even if Medina's behavior did amount to a seizure, his actions do not come within the purview of the Fourth Amendment. Under the principles set forth by the Ninth Circuit in *Attson*, Plaintiff is unable to show that Medina's actions had "no other purpose but to aid the government's investigatory or administrative functions." In fact, there is no evidence that Medina

was acting pursuant to any government function at all. It appears that his actions were initiated entirely independently. For all of these reasons, Plaintiff's Fourth Amendment claims will be dismissed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Dismiss in Part, **[Doc. 7]**, filed on October 19, 2004, is hereby **GRANTED**. Plaintiff's 42 U.S.C. §1981 and Fourth Amendment claims against all Defendants will be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's Title VII claims against Aragon and Medina, whether pursued against them in their individual or official capacities, also will be dismissed for failure to state a claim upon which relief can be granted.

Dated this 17th day of February, 2005.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Mark Chouinard

Attorneys for Defendants:
Aaron E. Bartels
Steven M. Gutierrez
Trent Howell